FILED
2013 Jul-31  PM 03:04
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **COURTNEY OWEN and the class** | ) | |
| **he seeks to represent,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 13-S-1009-S** |
| | ) | |
| **CHARMING CHARLIE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

This action arises from an attempt by Courtney Owen, a male plaintiff, to obtain employment in a retail position with defendant Charming Charlie, a business that sells women's fashion accessories.[1]  Plaintiff, on behalf of himself and the class he seeks to represent, alleges that defendant engaged in discrimination against males "on the basis of their sex with respect to hiring in retail sales positions" in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981a.[2]  This action is before the court on defendant's motion to dismiss plaintiff's complaint under 42 U.S.C. § 2000e-5 and Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust his administrative remedies.[3]  Upon consideration, this court will deny the motion.

---

[1] *See* doc. no. 1 (Complaint) ¶¶ 8-36.

[2] *Id.* ¶ 50; *see also id.* ¶ 1.

[3] *See* doc. no. 5 (Motion to Dismiss), at 1.

# I. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) permits a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). That rule must be read together with Rule 8(a), which requires that a pleading contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While that pleading standard does not require "detailed factual allegations," *Bell Atlantic Corp. v. Twombly*, 544 U.S. 544, 550 (2007), it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp.*, 550 U.S.] at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557 (brackets omitted).

*Iqbal*, 556 U.S. at 678 (alteration supplied).

As always is the case in the context of ruling upon a motion to dismiss, the district court is required to assume that

> the facts set forth in the plaintiff's complaint are true.  *See Anza* [*v. Ideal Steel Supply Corp.*], 547 U.S. 451, [453,] 126 S. Ct. [1991,] 1994 [(2006)] (stating that on a motion to dismiss, the court must "accept as true the factual allegations in the amended complaint"); *Marsh v. Butler County*, 268 F.3d 1014, 1023 (11th Cir. 2001) (*en banc*) (setting forth the facts in the case by "[a]ccepting all well-pleaded factual allegations (with reasonable inferences drawn favorably to Plaintiffs) in the complaint as true").

*Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277, 1281 n.1 (11th Cir. 2006) (alterations supplied).  Even so,

> the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  [*Bell Atlantic Corp.*, 550 U.S.] at 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted)).

*Iqbal*, 556 U.S. at 678 (alteration supplied).

## II.  FACTS AS ALLEGED

Defendant, Charming Charlie, sells women's fashion accessories, and operates over 200 retail establishments throughout the United States.[4]  Plaintiff completed an online application on July 11, 2012, for employment as a sales associate at defendant's Colonial Promenade Tannehill location in Bessemer, Alabama — a store that was scheduled to be opened on approximately September 23, 2012.[5]  He was qualified for

---

[4] Doc. no. 1 (Complaint) ¶ 9.

[5] *Id.* ¶ 10.

the position.[6]  Plaintiff received a telephonic message from defendant's manager, Shannon Wells, during the week of September 10, 2012.[7]  Ms. Wells's message informed plaintiff that she had received his online application, and wanted to interview him for the sales associate position.[8]  Ms. Wells conducted plaintiff's interview on September 15, 2012.[9]

During the interview, Ms. Wells informed plaintiff that she rarely hired males.[10] She also stated that men typically "don't like" the company's policy requiring all sales associates to wear six accessories while working.[11]  Plaintiff told Ms. Wells that he "did not have a problem" with that requirement.[12]  Ms. Wells, however, reiterated that men typically "don't like" the requirement, and usually "can't do the dress code," or something to that effect.[13]  Ms. Wells stated that she "might be willing" to hire plaintiff as a temporary employee, and that if he could follow the dress code, he "might" get a permanent position.[14]

Later on the day of his interview, plaintiff received an e-mail containing an

---

[6] *Id.* ¶¶ 11-12.

[7] *Id.* ¶ 14.

[8] *Id.* ¶ 15.

[9] *Id.* ¶ 16.

[10] Doc. no. 1 (Complaint) ¶ 17.

[11] *Id.* ¶¶ 18-19.

[12] *Id.* ¶ 20.

[13] *Id.* ¶ 21.

[14] *Id.* ¶ 22.

offer of employment, along with instructions for completing "onboarding" documents.[15]  Plaintiff completed the necessary documentation as requested.[16]  Later that week, plaintiff received a telephonic message from Ms. Wells, inviting him to join the "set-up team" to prepare for the grand opening of the new store.[17]

Plaintiff returned Ms. Wells's call and left a voice message on her cell phone, asking when he should report for work.[18]  Ms. Wells did not respond to plaintiff's message.[19]  Accordingly, plaintiff attempted to contact Ms. Wells on multiple additional occasions.[20]  However, his calls always went to voice mail, and the voice mailbox eventually became full, and stopped allowing him to leave further messages.[21]  Plaintiff never heard back from Ms. Wells about his start date.[22]

Plaintiff alleges that he "was denied employment with Defendant on or around September 23, 2012": *i.e.*, the approximate date when the Bessemer store was scheduled to open.[23]  He filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 4, 2012, which stated as follows:

---

[15] *Id.* ¶ 23.

[16] Doc. no. 1 (Complaint) ¶ 24.

[17] *Id.* ¶ 25.

[18] *Id.* ¶ 26.

[19] *Id.* ¶ 27.

[20] *Id.* ¶ 28.

[21] *Id.*

[22] Doc. no. 1 (Complaint) ¶ 29.

[23] *Id.* ¶ 30; *see also* doc. no. 5-1 (EEOC Charges), at 6.

I am a male.  On July 11, 2012, I applied for a sales associate position with [defendant].  I received an interview on September 15, 2012.  During the interview, Manager Shannon Wells told me that she rarely hires men.  She said that men typically don't like the company's requirement for employees to wear six to seven "accessories," which I perceived to be jewelry.  I told Ms. Wells that I didn't have a problem with the requirement.  Later that day, the company sent me an e-mail offer of employment.  However, despite numerous attempts to follow-up with Ms. Wells regarding the job offer, she has not returned my phone calls.  I believe that Ms. Wells intended not to return my calls in an attempt to replace me with a female.

I believe that I was discriminated against due to my sex, in violation of Title VII of the Civil Rights Act of 1964, as amended.[24]

The EEOC issued a Right to Sue letter on February 28, 2013.[25]

Plaintiff filed a supplemental charge of discrimination with the EEOC on March 22, 2013, stating that:

This is a supplement to my previous charge, charge no. 420-2013-00051.  As noted in that charge, I was denied employment by [defendant] on 9/23/2012 or thereafter, which would have been my approximate start date for the sales associate position I applied for.  My original charge mentions tile company's requirement to wear six to seven "accessories,"·which I perceived to be jewelry.  I told Ms. Wells, the manager who interviewed me, that I did not have a problem with that requirement.  Ms. Wells, however, staled that men typically don't like the company's requirement and usually "can't do the dress code," referring to the accessories policy, or something to that effect.  She stated that she might be willing to hire me as a temp, and that if I could follow the dress code, I might get a permanent position.  However, after receiving an e-mail with an offer of employment, I never heard back for my start date.  Upon information and belief, my employment would not have begun until 9/23/2012 or thereafter, as the Bessemer store had not

---

[24] *Id.* at 2 (alteration supplied).

[25] *Id.* at 4.

6

yet opened for business at the time I applied.  I was denied employment on or after 9/23/2012, as noted in the "Date(s) discrimination look place" box in my original charge.

Upon information and belief, the accessories requirement and other policies have a disparate impact on male applicants and employees and intentionally discriminate against male applicants and employees, without sufficient business justification, and [defendant] knows this.  In addition to its policies having a disparate impact and weeding out male applicants, respondent engages in a pattern and practice of intentional discrimination against males in the hiring process and in the terms and conditions of employment of any males who are hired and uses its accessories policy as a pretext for intentional discrimination in hiring and in other terms and conditions of employment.[26]

Plaintiff asserts that he filed the supplemental charge "out of an abundance of caution" in order to "mak[e] clear that Defendant's accessory policy has a disparate impact on male applicants and employees, and that Defendant engages in a pattern and practice of discriminating against males as a class[.]"[27]  The EEOC has not issued a Right to Sue letter on that charge.

### III.  DISCUSSION

Defendant has filed a motion to dismiss plaintiff's complaint under 42 U.S.C. § 2000e-5 and Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust his administrative remedies.[28]  Defendant argues that plaintiff's complaint does not contain an "individual claim for relief,"[29] and that plaintiff's first charge of

---

[26] *Id.* at 6 (alterations supplied).

[27] Doc. no. 1 (Complaint) ¶ 33 (alterations supplied).

[28] *See* doc. no. 5 (Motion to Dismiss), at 1.

[29] *Id.* at 3.

discrimination does not contain "allegations of class-wide discrimination."[30]

## A.     Whether Plaintiff's Complaint Includes an "Individual Claim for Relief"

The Eleventh Circuit requires a plaintiff to provide "a short and plain statement of the claim showing that [he] is entitled to relief." *Harrison v. Benchmark Electronics Huntsville, Inc.*, 593 F. 3d 1206, (11th Cir. 2010) (alteration supplied) (quoting Fed. R. Civ. P. 8(a)(2)).   "The point is to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Davis v. Coca-Cola Bottling Co. Consolidated*, 516 F.3d 955, 974 (11th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Here, plaintiff's complaint includes the allegations:  that he applied for a sales associate position;[31] that he was qualified for the position;[32] that, during his interview, Manager Shannon Wells told him that she rarely hired males, that men typically "don't like" the company's policy requiring all sales associates to wear six accessories while working, and that men usually "can't do the dress code," or something to that effect;[33] and that, after he received a job offer, Ms. Wells refused to return his calls seeking to establish a start date.[34]

---

[30] *Id.* at 2 (emphasis omitted).

[31] Doc. no. 1 (Complaint) ¶ 10.

[32] *Id.* ¶ 12.

[33] *Id.* ¶¶ 17, 21.

[34] *Id.* ¶¶ 26-29.

8

Further, the complaint asserts that "[t]he named plaintiff seeks . . . relief *for his individual claims* and those of the class."[35]  The relief claimed includes requests for: "[a]n Order placing or restoring *the plaintiff* and the class he seeks to represent into those jobs they would now be occupying but for the defendant's discriminatory practices"; "[a]n award of back pay, instatement or front pay, lost benefits, preferential rights to jobs, and any other appropriate equitable relief *to the plaintiff* and class members"; and "[a]n award of litigation costs and expenses, including reasonable attorneys' fees, *to the plaintiff* and class members."[36]

In sum, it is apparent that plaintiff's complaint includes an "individual claim for relief."[37]  Accordingly, this court will deny the portion of defendant's motion to dismiss resting on that ground.

**B.     Whether Plaintiff's Charges of Discrimination Include "Allegations of Class-Wide Discrimination"**

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge . . . .  [A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge."  *Cheek v. Western and Southern Life Insurance Co.*, 31 F.3d

---

[35] *Id.* ¶ 39 (alteration and emphasis supplied).

[36] *Id.* at 17 (alterations and emphasis supplied).

[37] *Id.* at 3.

497, 500 (7th Cir. 1994) (citations omitted).[38]

"Nevertheless, because most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Id*. Stated differently, "the specific words of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970).[39]

Instead, the claims that may be alleged in a judicial complaint are limited by four boundaries: (*i*) the specific claims alleged in the underlying EEOC charge;[40] (*ii*) those claims which are "like or reasonably related to" those alleged in the underlying charge;[41] (*iii*) the scope of the EEOC investigation that can reasonably be expected to

---

[38] As the Seventh Circuit has observed, "[t]his rule serves the dual purpose of affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, and of giving the employer some warning of the conduct about which the employee is aggrieved." *Cheek v. Western and Southern Life Insurance Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (citations omitted).

[39] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

[40] *See, e.g.*, *Alexander v. Fulton County*, 207 F.3d 1303, 1332 (11th Cir. 2000) ("The starting point of ascertaining the permissible scope of a judicial complaint alleging employment discrimination is the administrative charge and investigation.").

[41] *See, e.g.*, *Danner v. Phillips Petroleum Co.*, 447 F.2d 159, 162 (5th Cir. 1971) ("[T]he complaint in the civil action may properly encompass any discrimination *like or reasonably related to* the allegations [contained in the EEOC] charge and growing out of such allegations.") (emphasis and alterations supplied, citations and internal quotation marks omitted); *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970) ("[T]he allegations in a judicial complaint filed pursuant to Title VII 'may encompass any kind of discrimination *like or related to* allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission.'") (quoting *King v. Georgia Power Co.*, 295 F. Supp. 943, 947 (W.D. Ga. 1968))

grow out of the charge of discrimination;[42] and (*iv*) any discriminatory acts that were,

in fact, considered during the EEOC's investigation.[43]

> The logic of this rule is inherent in the statutory scheme of Title VII.  A charge of discrimination is not filed as a preliminary to a lawsuit.  On the contrary, the purpose of a charge of discrimination is to trigger the investigatory and conciliatory procedures of the EEOC.  Once a charge has been filed, the Commission carries out its investigatory function and attempts to obtain voluntary compliance with the law.  Only if the EEOC fails to achieve voluntary compliance will the matter ever become the subject of court action.  Thus it is obvious that *the civil action is much more intimately related to the EEOC investigation than to the words of the charge which originally triggered the investigation*.  Within this statutory scheme, it is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.

> A more exacting rule would be destructive of the logic of the statutory scheme, for it would impede the ability of the Commission to effect voluntary compliance.  *If an alleged discriminator knew that a particular issue which was the subject of EEOC conciliation efforts could never be the subject of a civil action, his incentive toward voluntary compliance would be lessened*.  . . .

*Sanchez*, 431 F.2d at 466 (emphasis supplied); *see also, e.g., Evans v. U.S. Pipe &*

---

(emphasis and alteration supplied); *see also*, *e.g., Jenkins v. Blue Cross Mut. Hosp. Ins., Inc*., 538 F.2d 164, 167 (7th Cir. 1976) (*en banc*) (quoting *Danner, supra*).

[42] *See, e.g., Mulhall v. Advance Security, Inc*., 19 F.3d 586, 589 n.8 (11th Cir. 1994) (citing *Sanchez*, *supra*).  As the Seventh Circuit observed, however, this "part of the test is difficult to apply because it requires speculation as to what the EEOC might or might not discover in the course of an investigation."  *Cheek v. Western and Southern Life Insurance Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

[43] *See, e.g., Cheek v. Western and Southern Life Insurance Co.*, 31 F.3d 497, 505 (7th Cir. 1994) ("We may grant that, if the EEOC considered the allegation of sexual harassment against Crady to be a permissible amendment to Cheek's EEOC charge *and therefore investigated Crady's conduct*, the allegations of sexual harassment should be treated as if it were part of the charge.") (emphasis supplied); *Griffin v. Carlin*, 755 F.2d 1516, 1522 (11th Cir. 1985).

*Foundry Company*, 696 F.2d 925, 929 (11th Cir. 1983) ("[T]he Commission should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.") (alteration supplied).

Defendant's motion to dismiss asserts that plaintiff's *first* charge of discrimination does not contain "allegations of class-wide discrimination."[44] Defendant admits, however, that plaintiff's *second* charge includes allegations of discrimination based on theories of "disparate impact" and "pattern and practice" against males as a class.[45]   Defendant does not believe the *second* charge to be sufficient because, "[u]pon information and belief . . . the EEOC has not completed its investigation, made any determination, or granted [plaintiff] a right-to-sue" with regard to that charge.[46]   Plaintiff's response to defendant's motion to dismiss "acknowledges that [plaintiff] has not yet received a right to sue in regard to his second charge of discrimination[.]"[47]   Accordingly, this court's analysis will only address the *first* charge of discrimination.

Plaintiff alleges in his first charge that Manager Shannon Wells made two statements during his interview that apply to the class of men as a whole: *i.e.*, that Ms.

---

[44] Doc. no. 5 (Motion to Dismiss), at 2 (emphasis omitted).

[45] *See id.* at 2-3.

[46] *Id.* at 3 (alterations supplied).

[47] Doc. no. 7 (Response to Motion to Dismiss), at 6 (alterations supplied).

Wells "rarely hires men"; and that "men typically don't like the company's requirement for employees to wear six to seven 'accessories.'"[48]  If true, the facts alleged show the existence of both a facially neutral policy ("the company's requirement for employees to wear six to seven 'accessories'"), and of a disparate impact on male applicants and employees (Ms. Wells's statement that "men typically don't like" that requirement).  Those facts also show that defendant has a pattern or practice of discriminating against males (Ms. Wells's statement that she "rarely hires men.").

Thus, although the language of plaintiff's first charge of discrimination does not "presage with literary exactitude the judicial pleadings which may follow" (such as by using the words "disparate impact," "pattern or practice," or "class"), *see Sanchez*, 431 F.2d at 465, the charge includes sufficient factual matter to trigger an EEOC investigation into his class allegations.  Accordingly, this court will also deny the portion of defendant's motion to dismiss resting on that ground.

### IV.  CONCLUSION

For the reasons explained above, defendant's motion to dismiss is DENIED in its entirety.

DONE and ORDERED this 31st day of July, 2013.

---

[48] Doc. no. 5-5 (EEOC Charges), at 2.

United States District Judge